**Digna BARRIOS, as Administratrix of the estate of Mario Barrios, deceased, Appellant,**

v.

**WATERMAN STEAMSHIP CORPORATION, Appellee.**

No. 18561.

United States Court of Appeals
Fifth Circuit.

May 26, 1961.

Raymond F. La Porte, La Porte & De La Parte, Tampa, Fla., for appellant.

James O. Davis, Jr., Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before JONES and BROWN, Circuit Judges, and CONNALLY, District Judge.

CONNALLY, District Judge.

This is an action under the Jones Act (46 U.S.C.A. § 688) by the mother and administratrix of a deceased seaman to recover of his employer for the death. The testimony in the record is undisputed; but it is inconclusive, and leaves much to imagination or conjecture, in showing how and when the deceased met his death, if in fact he did.

At 12:10 a. m. the morning of December 18, 1957, the S.S. Topa Topa, owned and operated by the defendant, and with the decedent Barrios a member of the crew, left the Yokohama docks and put to sea. Barrios had the bow watch from midnight to 4:00 a. m. He was relieved temporarily for a coffee break by another seaman (Sentes); and returned to his post, and reassumed his watch, at 2:55 a. m. Some forty minutes later, another crew member (Farnham) went to the bow to afford Barrios an additional respite, and found the bow unattended. Thinking that Barrios had left his post

momentarily to secure additional clothing, Farnham assumed the watch, and remained on duty until he was relieved at 4:00 a. m. Farnham did not notify the bridge of Barrios' absence from his post, either at 3:35 or at 4:00, thinking to protect him from possible disciplinary action. Hence, the Master did not learn of Barrios' disappearance until 8:35 a. m.

A search of the vessel was instituted immediately, and on its being discovered that Barrios was not aboard, urgent radio messages were dispatched to the Japanese Safety Agency, and to all vessels in the vicinity. The S.S. Topa Topa at that time was encountering very heavy weather, with winds of gale force, and was unable to return to search for the missing seaman.

Barrios has not been seen again, nor his body recovered. It must be assumed that he went overboard at some moment between 2:55 and 3:35; but one may only speculate as to whether he committed suicide, was the victim of foul play, or went over the side as a result of an accident, a sudden illness, or from some other cause. If, as plaintiff contends, there was a chance of rescue, it is conceivable that he may have been picked up by some small vessel in Tokyo Bay, and may be alive today.

Tried to the Court, findings and conclusions were filed wherein the Trial Court found that the plaintiff had failed to establish by a preponderance of the evidence that the defendant was guilty of any negligence proximately causing the death of the deceased. The appellant assigns as error here these findings, contending that they were clearly erroneous. We affirm, for the evidence abundantly supports the result reached by the Trial Court. Smith v. Reinauer Oil Transport, Inc., 1 Cir., 1958, 256 F.2d 646; Miller v. Farrell Lines, Inc., 2 Cir., 1957, 247 F.2d 503; Swain v. Mississippi Valley Barge Line Co., 3 Cir., 1957, 244 F.2d 821; Lapp v. Pennsylvania R. Co., 3 Cir., 1931, 51 F.2d 477.

Appellant's primary argument is to the effect that the vessel was at fault in that for some period of time immediately following Barrios' disappearance, she was without a bow watch, a violation of pertinent Coast Guard regulations. Despite the fact that Barrios himself was charged with the performance of this function, it is argued that this violation was responsible for the decedent's loss. Somewhat better founded, we think, is the argument that the seaman Farnham, on finding the bow unattended at 3:35, was remiss in his duty in failing promptly to notify the Captain. Despite the fact that Farnham's failure was motivated by a desire to protect Barrios from possible disciplinary action, prudence and seamanship would have required affirmative action on his part. If it be conceded, arguendo, that this was a negligent act of which the plaintiff might take advantage, nevertheless there is a complete want of any evidence tending to show that Barrios was alive at that time, or that he might have been rescued. The fact that he, of necessity, must have suffered a fall from the deck to the water's edge of some 35 to 40 feet; the probability of his being struck by the side of the vessel or by her propellers; the uncertainty as to the time at which he fell; and the darkness and fog, all point to a contrary conclusion. Thus, plaintiff's reliance on Kernan v. American Dredging Co., 1957, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382, is not well founded, for the violation of the Coast Guard regulation there involved was held to have a direct causal connection with the seaman's death. The contrary is true here.

The judgment of the Trial Court was correct, and is affirmed.

Affirmed.